# In the United States District Court
# For the Southern District of Georgia
# Brunswick Division

ROBIN HIATT; and CHANDA HIATT,

    Plaintiffs,

v.

REBEL AUCTION CO., INC.; LARRY DAVIS,

    Defendants.

CIVIL ACTION NO.: 2:13-CV-20

## ORDER

Presently before the Court is Plaintiffs' Motion to Exclude Defendants' Exhibit No. 13 "Surveillance Videos of Robin Hiatt", which was filed on August 12, 2015. Dkt. No. 152. Defendants filed a Response, and Plaintiffs filed a Reply. Dkt. Nos. 158, 167. For the reasons which follow, Plaintiffs' Motion is **DENIED**.

### I. Timeliness of Plaintiffs' Motion

Plaintiffs filed this cause of action on February 5, 2013, and alleged that Plaintiff Robin Hiatt was an invitee at an equipment auction operated by Defendant Rebel Auction Company on December 8, 2011. Plaintiffs asserted Robin Hiatt bought a mini

excavator at this auction and was to go to a "specified area" to load that equipment onto a truck. Dkt. No. 1, ¶ 15. Plaintiffs also asserted the specified area was extremely dark and had no artificial lighting, making visibility poor. According to Plaintiffs, Robin Hiatt was struck on the right side of his body by a Caterpillar excavator (not the one Robin Hiatt purchased), which caused him to suffer "significant and debilitating physical injuries, including . . . an injury to his spinal cord." Id. at ¶ 22.

The Court entered a Scheduling Order on May 10, 2013, which advised the parties, in relevant part, that "Motions in limine <u>shall</u> be submitted in writing at least five (5) days prior to the pretrial conference[.]" Dkt. No. 23, p. 2 (emphasis supplied). This Scheduling Order was amended on August 29, 2013, and the Court once again advised the parties of their obligation to file their motions in limine no later than five (5) days before the pretrial conference. Dkt. No. 37, p. 2. In the parties' Consolidated Pretrial Order, which was filed on April 23, 2015, counsel represented there were no motions pending before the Court at that time. However, Plaintiffs reserved the right to file a motion to compel Defendants to produce all raw, unedited footage of any and all surveillance videos of Plaintiff Robin Hiatt. Dkt. No. 124, p. 3.

On May 26, 2015, the Court noticed the pretrial conference in this case, which was to be held on June 29, 2015. Counsel were again reminded of their duty to file any motions in limine no later than five days before the pretrial conference, with the added provision that these motions were to be filed "if practicable; otherwise, such motions may be filed up to the time of trial (L.R.7.4)." Dkt. No. 127, p. 2. Defendants filed a motion in limine on June 23, 2015. Dkt. No. 131. At the pretrial conference conducted on June 29, 2015, counsel did not indicate that there were any remaining disputes regarding the video footage. Dkt. No. 137-1.

The Magistrate Judge conducted a hearing on August 11, 2015 on Defendants' Motion in Limine and the parties' Objections to jury charges and entered an Order on that Motion and those Objections on August 13, 2015. Dkt. Nos. 151, 153. At no point during this hearing did counsel indicate to the Court that the video footage still remained a point of contention. In fact, when the Magistrate Judge specifically asked if there were any other issues the parties wished to raise at that time, Plaintiffs' counsel only stated there may be objections to certain deposition testimony and voiced concern about proper decorum. Aug. 11, 2015, Hr'g at 3:49:01-3:50:08.

AO 72A
(Rev. 8/82)

3

The Court recognizes that parties were to file all motions in limine no later than five (5) days prior to the pretrial conference, <u>if practicable</u>. S.D. Ga. L.R. 7.4. However, Plaintiffs have failed to show that it was not practicable to file their present Motion in Limine before August 12, 2015, a mere six (6) days before trial. By counsel's own admissions, they received portions of the alleged video surveillance of Plaintiff Robin Hiatt on April 20, 2015, and upon review of that footage, opined that the footage had been edited. Dkt. No. 152, p. 1. It appears that Plaintiffs' counsel did not contact Defendants' counsel until May 21, 2015, a month after receiving this footage. Dkt. No. 158-1, p. 1. While Defendants' counsel was not able to get any missing video footage even a month after that, he stated that, if the investigator was not forthcoming, he would not object to subpoenaing the company to produce the raw footage at their office. Dkt. No. 158-2, p. 1.

The evidence before the Court fails to reveal that the information forming the basis of Plaintiffs' Motion was not known to them in April 2015 at the earliest and at the latest when counsel appeared before the Court on June 29, 2015, at the pretrial conference and again on August 11, 2015, at the hearing on Defendants' Motion in Limine. Yet counsel failed to present any contentions regarding the raw video footage on these

AO 72A
(Rev. 8/82)

4

occasions. Consequently, Plaintiffs' Motion in Limine, dkt. no. 152, is **DENIED** as untimely filed.

II. **Plaintiffs' Specific Objections to the Video Surveillance Evidence**

In the alternative, even if Plaintiffs' Motion were considered timely, their Motion is nevertheless due to be denied. Based on Defendants' counsel's representations, EMI Security produced to Defendants' counsel all footage depicting Plaintiff Robin Hiatt, and Defendants' counsel in turn provided that footage to Plaintiffs' counsel. The investigators at EMI were made available to Plaintiffs for deposition, and Plaintiffs did not avail themselves of that opportunity. Dkt. No. 158, p. 10; Dkt. No. 167, p. 4. Plaintiffs' counsel were aware of this opportunity on June 23, 2015, which was, of course, before the pretrial conference and certainly before counsel appeared before the Magistrate Judge.[1] Dkt. No. 158-2, p. 1.

Additionally, it appears this footage will be properly presented as impeachment evidence.[2] This evidence did not come

---

[1] The Court notes Plaintiffs' assertion that they were unaware of the option to depose EMI Security personnel until July 21, 2015. Dkt. No. 167, p. 2. Plaintiffs' counsel could have sought to depose a representative of EMI as soon as Plaintiffs received the surveillance video. Furthermore, there can be no doubt that Plaintiffs' counsel were aware of any alleged insufficiency of the video surveillance footage prior to the August 11, 2015, hearing.

[2] The Court presumes Defendants' counsel will be able to lay the proper foundation for the introduction of this evidence at trial,

into being until February and March 2015, which was after the close of discovery on March 10, 2014. Dkt. No. 43. However, this evidence need not have been produced during the discovery period, as it is not substantive evidence. Alphonso v. Esfeller Oil Field Const., Inc., 380 F. App'x 808, 810 (11th Cir. 2010) (noting that Rule 26 does not require pre-trial disclosure of evidence that may be offered at trial solely for impeachment and may be used to assess a plaintiff's credibility as to testimony regarding disability); see also Dehart v. Wal-Mart Stores, East, L.P., No. 4:05CV00061, 2006 WL 83405, at *2 (W.D. Va. Jan. 6, 2006) (distinguishing between surveillance video evidence which will be used to impeach and that which is substantive in nature, i.e., evidence offered to establish the underlying facts in a case). As the surveillance occurred well after the incident giving rise to Plaintiffs' Complaint, the footage may be used as an impeachment tool, if need be.[3]

The Court also notes Plaintiffs' contentions regarding the "completeness doctrine." Dkt. No. 152, pp. 3-5. Plaintiffs maintain the failure to produce the complete, unedited portion

---

particularly considering the lack of argument by Plaintiffs' counsel regarding the admissibility of this evidence on a foundational basis. In fact, Plaintiffs' counsel does not assert this footage cannot be used as impeachment evidence, only that its production does not satisfy certain Rules of Evidence.

[3] Based on their Reply, Plaintiffs have abandoned their contention that the video footage depicts minor children and non-party adults. Dkt. No. 167.

of the video recordings "suggests that they would be beneficial to the Plaintiff Robin Hiatt or provide direct evidence of the serious nature of his injuries." Id. at pp. 4-5. In response, Defendants state that they have produced raw, unedited video of all surveillance depicting Mr. Hiatt. Defendants explain, "[t]he fact that there are missing numbers in the filing sequence does not indicate a missing video of Mr. Hiatt. Instead EMI explained that during surveillance the camera is sometimes activated without capturing any video of the person being observed. These clips are not saved to the surveillance file because they contain no video of the subject." Dkt. No. 158, p. 2. "Rule 106 [of the Federal Rules of Civil Procedure] provides that when a writing or recorded statement is introduced by a party, an adverse party may require the introduction . . . of any other part . . . which in fairness ought to be considered contemporaneously with it. . . . Under the Rule 106 fairness standard, the exculpatory portion of the" evidence should be "admitted if it [is] relevant to an issue in the case and necessary to clarify or explain the portion received." United States v. Range, 94 F.3d 614, 620-21 (11th Cir. 1996).

Here, the remaining thirteen (13) video clips at issue were not deemed relevant to the case contracted for by the surveillance company because these clips were not of Plaintiff

Robin Hiatt and, therefore, were not retained by the surveillance company. Dkt. No. 158-9, p. 1. While it would have been ideal for the Court to be able to review these clips to determine whether they are relevant, it appears that the clips do not even depict Mr. Hiatt. Thus, the clips would not clarify or explain the surveillance video that Defendants seek to use. Furthermore, Plaintiffs have not made any argument that the surveillance footage that Defendants seek to use is taken out of context, distorted, or confusing, or that it inaccurately depicts the movements and actions of Mr. Hiatt. Consequently, Plaintiffs have failed to establish that the deleted clips are necessary to clarify what is on the surveillance footage or otherwise explain that footage to the jury.

Moreover, any information in the deleted clips was available through other means. Plaintiffs had the opportunity to depose a representative of EMI regarding the other clips to discover, among other things, what the clips depicted and why they were not retained. Likewise, Mr. Hiatt should be able to testify about his movements and activities depicted on the surveillance footage and the activities he undertook in the time periods surrounding this footage. Thus, to the extent Plaintiffs seek to clarify or explain the surveillance footage, they do not need the deleted clips to do so.

Accordingly, in addition to being untimely, Plaintiffs' objections to the surveillance footage are substantively unavailing, and Plaintiffs' Motion is **DENIED** for this reason as well.

**SO ORDERED**, this \_\_\_ day of August, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)

9